MARTHA CRAIG DAUGHTREY, Circuit Judge.
*442 Teresa Barry, a judicial administrative assistant, sued three judges and two employees of the Franklin County Municipal Court under 42 U.S.C. § 1983, claiming retaliation in violation of the Free Speech Clause of the First Amendment and gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. The defendants moved for summary judgment, and the district court held in favor of the defendants-except on two claims against defendant Judge James O'Grady, a First Amendment retaliation claim and a Fourteenth Amendment equal-protection, gender-discrimination claim. On those two claims, the district court rejected O'Grady's qualified-immunity argument and concluded that summary judgment was not appropriate because genuine disputes of material fact remain.
On appeal, O'Grady contends that the district court erred in denying him qualified immunity on the two remaining claims. Because O'Grady's argument relies on disagreements with the district court's weighing of facts and factual inferences-and not questions of law-we have no jurisdiction and must dismiss the appeal. See Johnson v. Jones , 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
BACKGROUND[1]
Barry alleges that O'Grady created a hostile work environment rife with vulgar comments about women, either coming from O'Grady directly, encouraged by him, or tolerated by him. Barry highlights, among other allegations, that O'Grady was involved in a conversation about a female lawyer who appeared regularly in front of the court. O'Grady and two bailiffs explicitly discussed the lawyer's sex life, with one of the bailiffs saying that the lawyer "licked [a male lawyer] like a lap dog" and O'Grady responding that the female lawyer must be "good at what she does." Angry at what she overheard, Barry posted about the conversation on Facebook and told the female lawyer about it.
When O'Grady learned that Barry had reported the conversation to the female lawyer, O'Grady began to retaliate. In response, Barry brought O'Grady's behavior to the attention of the court administration. She was moved out of O'Grady's chambers, and eventually accepted a transfer to a less-desirable position because she believed that was her only real option. Even after the move, her work life continued to devolve, and she suffered from mental-health issues as a result.
Barry sued under § 1983 and, after discovery, O'Grady argued that qualified immunity protected him from liability. The district court disagreed, finding disputed issues of material fact in the two claims against O'Grady and concluding that a reasonable jury could find in Barry's favor on both claims. The district court thus denied O'Grady summary judgment, and O'Grady now appeals.
DISCUSSION
In all but a few circumstances, we have jurisdiction to hear appeals only from final decisions. See 28 U.S.C. § 1291.
*443 Because the denial of summary judgment is not a final decision, it ordinarily is not appealable. In the context of a denial of qualified immunity, however, a denial of summary judgment may be treated as final under § 1291. Mitchell v. Forsyth , 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). But "[t]he final judgment rule embodied in 28 U.S.C. § 1291 is deeply rooted in American law, and the exception carved out for orders denying qualified immunity is a narrow one." Thompson v. City of Lebanon , 831 F.3d 366, 373 (6th Cir. 2016) (Stanch, J., concurring in part and dissenting in part). That narrow carve-out recognizes that courts of appeals have jurisdiction to hear an appeal of a qualified-immunity denial only when the appeal presents a purely legal question. See, e.g. , Estate of Carter v. City of Detroit , 408 F.3d 305, 310 (6th Cir. 2005). In other words, we cannot decide disputed factual issues at the summary-judgment stage, and if the appeal from a denial of qualified immunity turns on an issue of fact, we may not exercise jurisdiction. See Johnson , 515 U.S. at 319-20, 115 S.Ct. 2151.
We have, however, recognized two narrow exceptions to the rule prohibiting fact-based interlocutory appeals. First, "[i]n exceptional circumstances, an appellate court may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is 'blatantly and demonstrably false.' " Austin v. Redford Twp. Police Dep't , 690 F.3d 490, 496 (6th Cir. 2012) (quoting Bishop v. Hackel , 636 F.3d 757, 769 (6th Cir. 2011) ). And second, we may overlook a factual disagreement if the defendant, despite disputing the plaintiff's version of the story, is "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." Phelps v. Coy , 286 F.3d 295, 298 (6th Cir. 2002) (quoting Berryman v. Rieger , 150 F.3d 561, 563 (6th Cir. 1998) ). Put another way, if the issues on appeal are "purely legal" and if "this court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue," "then there is an issue over which this court has jurisdiction." Estate of Carter , 408 F.3d at 310. But to the extent that the defendant's argument "rel[ies] on [his] own disputed version of the facts," we have no jurisdiction to hear the appeal. McKenna v. City of Royal Oak , 469 F.3d 559, 561 (6th Cir. 2006).
The upshot is that, in most appeals of denials of qualified immunity, we must defer to the district court's determinations of fact. Beyond determinations of fact, "[w]e have also held that a defendant may not challenge the inferences that the district court draws from those facts, as that too is a prohibited fact-based appeal." DiLuzio v. Vill. of Yorkville , 796 F.3d 604, 609 (6th Cir. 2015). Indeed, "ideally we need look no further than the district court's opinion," and "we often may be able merely to adopt the district court's recitation of facts and inferences," id. at 611, as we have done here.
That well-settled standard is dispositive in this case. Given that the district court's decision turned on its determination that disputed issues of material fact remain, we may exercise jurisdiction only if O'Grady can satisfy one of the two narrow exceptions to Johnson . As an initial matter, O'Grady does not attempt to argue that any of the district court's factual conclusions were "blatantly and demonstrably false." Austin , 690 F.3d at 496 (citation and quotation marks omitted). To be sure, O'Grady's argument on appeal is based almost exclusively on disagreements with the district court's factual determinations and inferences. After all, his brief starts with a 24-page recitation of the facts, in which he uses facts in the record-as well *444 as facts not in the record-to draw inferences in his favor. But he does not explain why any of the district court's conclusions were blatantly and demonstrably false; he merely disagrees with them. That is insufficient to give us jurisdiction.
Even though this court is prohibited from resolving O'Grady's factual protests, we still would have jurisdiction over the appeal if O'Grady presented any "neat abstract issues of law," Phillips v. Roane County , 534 F.3d 531, 538 (6th Cir. 2008) (quotation marks and citation omitted). That is, we would have jurisdiction if O'Grady argued that he wins even when we view the facts-as we must-in a light favorable to Barry. He does not. Instead, O'Grady applies his own factual conclusions and inferences to both of Barry's surviving claims.
Throughout his argument on the First Amendment claim, O'Grady outlines the correct legal standard but then simply draws his own favorable inferences or ignores the district court's inferences in favor of Barry. For example, addressing Barry's arguably retaliatory transfer, O'Grady fails to accept Barry's claim that she felt forced to take the transfer. Instead, O'Grady continues to argue that the transfer really was Barry's choice, that she actually did not have to take the transfer, and that O'Grady believed that Barry wanted the transfer. These propositions, however, are not legal arguments; they are factual conclusions that are unsupported at least and directly refuted at most.
O'Grady's argument regarding Barry's gender-discrimination claim fares no better. His argument begins with the bold contention that there is "no evidence whatsoever" of O'Grady's "hostility to women in general."[2] He then argues, among other things, that Barry provided only one example of O'Grady using the term "bitch," and that Barry herself used the word on her personal Facebook page. Addressing Barry's allegation that O'Grady said "if I wasn't married ..." after describing a female lawyer as "hot," O'Grady contends that there is "no reasonable inference" of anti-female bias because Barry herself described someone as hot on her Facebook page. O'Grady also addresses the conversation in which he and two bailiffs spoke explicitly about the sex lives of lawyers who appeared regularly in their court-the conversation in which the female lawyer was described by a bailiff as licking a male lawyer "like a lap dog," to which O'Grady responded that she must be "good at what she does." Comparing that conversation to the post on Barry's Facebook page, O'Grady contends that Barry's Facebook post arguably "contains the only *445 comment that is demeaning to the class of women in the entire evidentiary record."
Here, too, O'Grady fails to accept Barry's facts and show why, as a matter of law, she cannot prevail on her claim. Instead, he challenges the weight, the plausibility, and the credibility of the evidence supporting Barry's gender-discrimination claim. The closest that O'Grady comes to applying the legal standard for gender discrimination is a string cite to cases in which he argues that the "sexually offensive conduct [was] more serious or persistent" than what Barry alleges and yet we upheld summary judgments in favor of the defendants. He does not explain, however, why those cases are similar to this case. Nor does he apply that conclusion to the qualified-immunity analysis. And like the rest of his briefing, in listing those cases O'Grady is not "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." Phelps , 286 F.3d at 298 (quoting Berryman , 150 F.3d at 563 ). Thus "we cannot entertain the defendant's arguments," whatever the merits. Id.[3]
CONCLUSION
We have jurisdiction to hear the appeal of a denial of qualified immunity only when "the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.' " Phillips , 534 F.3d at 538 (quoting Johnson , 515 U.S. at 317, 115 S.Ct. 2151 ). But here, O'Grady does not accept the facts in the light most favorable to Barry, as required by our well-settled caselaw. Instead, he "rel[ies] on [his] own disputed version of the facts," McKenna , 469 F.3d at 561, placing his appeal squarely into the category of cases that Johnson prohibits us from hearing. We thus DISMISS the appeal for lack of jurisdiction.
DISSENT

The district court's 20-page background provides a thorough recitation of the facts that pulls from over 3,000 pages of record. O'Grady's disagreements with the trial court's statement of the facts are central to this appeal. For those reasons, instead of creating a new statement of the facts, we rely on the district court's opinion, available at Barry v. O'Grady, et al. , No. 14-cv-2693, 2017 WL 1234048, at *1-*10 (S.D. Ohio Mar. 31, 2017).

It appears that O'Grady's failure to present an appealable issue of law arises, in part, from his misunderstanding of what makes a fact "material." As is long-established, "[a] 'material' fact is one 'that might affect the outcome of the suit.' " J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc. , 485 F.3d 880, 887 (6th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). O'Grady, however, appears to argue from the understanding that "material fact" is synonymous with direct evidence. O'Grady argues that he "does not dispute Plaintiff's material factual allegations." Appellant's Reply Br. 2 (emphasis in original). Yet throughout his briefs O'Grady contends that there is a total lack of evidence supporting Barry's claims even when the district court concluded otherwise using inferences drawn from other record facts. For example, O'Grady cites his own deposition and the deposition of defendant Emily Shaw to show that he did not retaliate. O'Grady does not, however, address the inferences drawn in Barry's favor that led the district court to conclude that there were disputes of material fact and that a reasonable jury could conclude that O'Grady retaliated against Barry, even though O'Grady denied that he did.

As part of her gender-discrimination claim, Barry alleged that she was constructively discharged. On appeal O'Grady argues that there is no constructive discharge because Barry did not actually quit her job until after defendants had filed their motion for summary judgment. He contends that "[i]t is beyond dispute the evidence she was still employed refutes any allegation Plaintiff had quit her job." Yet again, O'Grady argues the underlying facts and fails to explain why he prevails as a matter of law when the facts are viewed in a light most favorable to Barry-indeed, he fails to cite a single case that supports his position. In short, O'Grady's constructive-discharge argument also relies on factual disagreements with the district court and so we do not have jurisdiction to consider it. See Johnson , 515 U.S. at 319-20, 115 S.Ct. 2151.