NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0130n.06

No. 18-1857

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CAROL LIOGGHIO,

      Plaintiff-Appellee,

v.

TOWNSHIP OF SALEM; GARY WHITTAKER, individually and in his capacity as Supervisor of Salem Township,

      Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 19, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: KETHLEDGE, WHITE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge. Carol Liogghio claims that the Salem Township Supervisor, Gary Whittaker, forced her to quit her job because of her political activity. The district court found that Liogghio had raised material disputes of fact and thus denied Whittaker qualified immunity. Our binding precedent compels us to affirm.

I.

We take the district court's view of the facts in the light most favorable to Liogghio. *See Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011). In 2001, Salem Township hired Liogghio to work as an administrative assistant to the Township Supervisor. Her responsibilities included answering questions at the front counter and other clerical duties. In August 2012, the incumbent Township Supervisor, Robert Heyl, ran for re-election; Liogghio ran for Township Clerk as his running mate. They lost, and Heyl's competitor, Gary Whittaker, was elected the new Supervisor.

Heyl later met with Whittaker to discuss the transition. At this meeting, Whittaker apparently asked Heyl to fire Liogghio from her position as administrative assistant. Heyl refused. Some time later, Whittaker told a resident of the Township that he did not plan to fire Liogghio, but that he would "force her to quit."

Shortly before the new slate took office, Whittaker met with Liogghio. Whittaker told her that he could not work with her because her husband had criticized operations at Whittaker's farm. Liogghio asked Whittaker if he planned to fire her. Whittaker said no, but that she was "not going to want to be here." Whittaker thereafter began making various changes to the office. For example, Whittaker reduced hours for all employees and changed the office's retirement plan. Whittaker also reassigned some of Liogghio's duties to other employees.

In July 2013, Liogghio had back surgery and took several months off work. During that time, Whittaker hired a temporary employee to cover Liogghio's duties. When Liogghio returned to work, Whittaker made the temporary employee a permanent administrative assistant and reassigned more of Liogghio's duties to the assistant.

The following January, a new resident in the Township, Cindy Marriott, visited the Township office to apply for a pass to use the landfill. Liogghio asked her for her driver's license as proof of her residence. Marriott had not updated her address on her license, but she gave Liogghio tax documents that reflected her residence in the Township. Liogghio refused to give Marriott a pass for the landfill because the application form (which Liogghio herself had created) specified that a license was required.

When Whittaker learned that Liogghio had refused to give Marriott a pass, he instructed Liogghio to issue the pass. Again, Liogghio refused. Whittaker then yelled at Liogghio, telling her that he was removing her authority to issue passes for the landfill. When Liogghio replied that

she would go to the Township Board, Whittaker laughed at her. Liogghio returned to her desk and documented in a note what she thought had just happened. At the end of the note, Liogghio wrote, "I am probably getting fired. I hope so."

Shortly thereafter, a doctor told Liogghio that she should stop working for various health reasons. Based in part on this advice, Liogghio stopped going to work. A few months later, Whittaker sent Liogghio a letter asking when she planned to return to the office. In the letter, Whittaker added that he was "continuing to hold an employment position open for [Liogghio] with the Township" and that he anticipated that she would return to work "as soon as possible." Liogghio responded by letter. She did not say when she would return to work, but she did accuse Whittaker of trying "to make [her] working conditions so intolerable that . . . [she] would resign." Liogghio never came back to work.

Liogghio thereafter brought this suit under 18 U.S.C. § 1983, claiming that Whittaker had retaliated against her for exercising her First Amendment right to run in the 2012 Township election. Discovery ensued, and numerous witnesses testified in depositions about the events leading up to Liogghio's departure from the office. (Defendants, for their part, produced substantial testimony that Liogghio was rude and uncooperative toward coworkers and township residents alike.) Whittaker moved for summary judgment, asserting qualified immunity. The district court denied his motion, finding that Liogghio had created genuine disputes of material fact as to each element of her claim. This appeal followed.

## II.

We review the district court's denial of qualified immunity de novo. *See Walker*, 649 F.3d at 503. Qualified immunity requires us to address two questions: first, whether the official violated

a constitutional right; and second, whether that violation would be clear to a reasonable official in light of the specific context of the case. *See Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011).

Qualified immunity protects reasonable officials not only from liability but also from the burdens of a lawsuit. *See Plumhoff v. Rickard*, 572 U.S. 765, 771-72 (2014). Our interlocutory jurisdiction to review denials of qualified immunity is limited to questions of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We cannot review the district court's determination of "which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). And precedent in our circuit precludes appellate review even of the district court's "inferences" from the "record-supported evidence." *See DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 610 (6th Cir. 2015).

We first consider whether the facts, taken in the light most favorable to Liogghio, show that Whittaker retaliated against her because of her political activity, in violation of the First Amendment. To prove a claim of First Amendment retaliation, Liogghio must establish three elements: first, that she engaged in constitutionally protected speech or conduct; second, that Whittaker took an adverse action against her that "would deter a person of ordinary firmness from continuing to engage in that conduct"; and third, that her protected conduct caused Whittaker's adverse actions against her. *See Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). Whittaker does not contest that Liogghio's participation in the election is constitutionally protected. Thus the question is whether Liogghio can show an adverse action and causation.

As for an adverse action, Liogghio alleges that Whittaker deliberately forced her to quit, *i.e.*, that she was "constructively discharged." *See Logan v. Denny's Inc*., 259 F.3d 558, 568 (6th Cir. 2001). To prove constructive discharge, Liogghio must show that Whittaker "deliberately

create[d] intolerable working conditions, as perceived by a reasonable person," that he did so "with the intention" of forcing her to quit, and that she actually quit. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012).

Liogghio says that Whittaker created intolerable working conditions by reassigning her duties to other employees, reducing her hours, and once yelling at her. She also says that Whittaker took these actions with the intention of forcing her to quit—citing Whittaker's warning that she was "not going to want to" continue in her job, and statements to two other people about firing her or forcing her to quit. Based on these allegations, the district court found that "there [was] a question of fact whether Whittaker took [an] adverse action against Plaintiff that would deter a person of ordinary fitness [sic] from continuing to run for office." Specifically, the court reasoned that Liogghio had offered evidence that her "important duties and responsibilities were reduced significantly after Whittaker took office," and that "Whittaker yelled at Plaintiff on January 2, 2015," and that Whittaker "stripped her of her responsibilities for issuing landfill permits that day." These findings amount to the district court's determination that there is a material dispute of fact about whether Whittaker took an adverse action against Liogghio.

Whittaker contends that these putative retaliatory actions were not so severe that a reasonable person would find them intolerable. But this circuit has previously held that "[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Hence we lack jurisdiction to review this contention. *See Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018). Whittaker also asserts that Liogghio did not actually quit. But the district court held that a jury could infer the contrary, and we lack jurisdiction to review that factual determination also. *See id.*

The remaining element of Liogghio's retaliation claim is causation. To establish causation, Liogghio must offer evidence that would allow a reasonable juror to conclude that the constructive discharge would not have occurred "but for" her 2012 candidacy for Township clerk. *See Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010). Liogghio offers several pieces of evidence that Whittaker wanted her fired and that he intended to force her to quit. Specifically, she alleges that Whittaker asked the outgoing Supervisor Heyl to fire her; that Whittaker told her that he could not work with her because of her husband's comments about Whittaker's farm; that Whittaker warned her that she was "not going to want to" continue in her job, and that Whittaker talked to a resident about forcing Liogghio to quit.

What is arguably absent from the record is any evidence that Whittaker tried to force Liogghio to quit because of her political activity—as opposed to (as he told her in 2012) her husband's comments about Whittaker's farm. Yet the district court determined that Liogghio "produced evidence of a retaliatory motive such that a reasonable juror could conclude that the adverse action would not have occurred 'but for' her engagement in the protected activity." The court thus found that Liogghio had presented "sufficient evidence to create a genuine dispute of material fact whether the adverse actions promulgated by Whittaker were motivated, at least in part, as a response to Plaintiff exercising her constitutional rights." And under our precedent, we are powerless to review that determination in this interlocutory review. *See Barry*, 895 F.3d at 443.

Our lack of jurisdiction to review the constitutional issue in this case stands in contrast, for example, to our jurisdiction in a qualified-immunity appeal involving Fourth Amendment excessive force. In those cases, we can review whether a certain set of facts amounts to excessive force as a matter of law. *See, e.g.*, *Hayden*, 640 F.3d at 153-54. But here we cannot review whether

Liogghio's facts amount to unconstitutional retaliation—because our precedents say that the two contested elements of this type of claim—adverse action and causation—are questions of fact. *See, e.g.*, *Bell*, 308 F.3d at 603; *Bailey v. Floyd Cty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 144 (6th Cir. 1997).

That leaves the question whether the putative violation of Liogghio's First Amendment rights would have been clear to a reasonable official in Whittaker's factual position. Courts have long recognized that a public employer may not retaliate against an employee for her political activity. *See, e.g.*, *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 298, 302 (6th Cir. 2012). Thus, under the district court's determination of the facts, a reasonable officer in Whittaker's position would have known that he was violating Liogghio's constitutional rights. Hence we must affirm the denial of qualified immunity.

Finally, Liogghio moves for sanctions under Federal Rule of Appellate Procedure 38. That motion itself is more frivolous than any argument Whittaker has made here. *See Dubay v. Wells*, 506 F.3d 422, 432-33 (6th Cir. 2007).

The district court's order is affirmed, and Liogghio's motion is denied.