**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0209n.06
**No. 19-1729**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 14, 2020
DEBORAH S. HUNT, Clerk

WILLIAM FRANKLIN,

    Plaintiff-Appellee,

v.

CITY OF SOUTHFIELD, MICHIGAN,

    Defendant,

GREGORY ROESKE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

---

**BEFORE:** STRANCH, BUSH, and LARSEN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** William Franklin sued Police Officer Gregory Roeske and others under 42 U.S.C. § 1983 for alleged constitutional violations arising out of an encounter that led to his arrest. Officer Roeske brings this interlocutory appeal challenging the district court's denial, at summary judgment, of qualified immunity on Franklin's excessive force claim against him. But because both the objective reasonableness of Roeske's actions and the assertion that he did not violate clearly established law hinge on disputes of material fact not conceded or otherwise resolved by the record, we are without jurisdiction to hear this appeal. We must therefore **DISMISS** the case for lack of jurisdiction.

## I.    BACKGROUND

### A.  Factual Record

On August 31, 2013,[1] police received a report of a fight between a man and a woman in a purple car at a gas station in Southfield, Michigan.  An "anonymous caller witnessed a woman being hit by a male subject."  Officer Gregory Roeske of the Southfield Police Department was dispatched to the scene.  Roeske and another officer checked the gas station but found no purple vehicle.  Ten minutes later, an anonymous caller reported a man in a purple vehicle assaulting a female passenger on George Washington Drive.  As Roeske approached that location, he found Franklin sitting in a purple Oldsmobile with two female passengers.

The remainder of the encounter was captured on Roeske's in-car video system.  Roeske activated his overhead lights and turned into the intersection where Franklin was stopped.  Upon seeing Roeske, Franklin started to drive down Lafayette Circle.  While Franklin disputes seeing Roeske's overhead lights, the video indicates that Roeske's lights were on, although he never activated his siren or directed Franklin to pull over.  Twenty seconds later, Franklin pulled into his own driveway.  Roeske followed.

The next events are at the heart of this appeal.  Franklin parked in this driveway; Roeske parked behind him and shouted, "Put your hands up! Hands up!"  A woman exited the passenger seat with her hands up.  Franklin exited from the driver's side and walked around the back of the car, keeping his distance from Roeske, who exited the police car with his taser gun drawn.[2] Franklin was upset and was exclaiming that he was at his home.  Roeske approached Franklin,

---

[1] Roeske's brief indicates that the events in question transpired on August 16, 2016.  This conflicts with the evidence in the record.

[2] Roeske testified that he exited the vehicle with his Glock pistol drawn.  It appears from the video, however, that he drew his taser.

pointed the taser gun at his chest, and Franklin put his hands up. He stayed in the same location and continued speaking loudly. Roeske, at this point, knew that Franklin was unarmed. He made a motion with his left index finger, which according to Roeske, was to command "Plaintiff to come to the front of his vehicle and put his hands on the hood; Ofc. Roeske testified that he did this verbally and through a gesture, the video makes it clear that he did gesture although the audio is not entirely clear." According to Franklin, Roeske instructed him to move forward but did not order him to put his hands on the hood of the patrol car. Franklin walked toward Roeske with his hands up, did not appear to turn toward the hood of the patrol car, and continued to face Roeske with his hands in the air.

Roeske shot Franklin in the abdomen with his taser gun. Franklin clutched his chest and stomach and buckled to the pavement. Franklin testified that he was able to pull off one of the taser probes as he fell to the pavement. Once on the ground, Franklin is not entirely visible on the video, but he appears to roll over, at times continuing to speak. Roeske asserts that Franklin then "sits up," but the video shows that while he picked his head up to speak, Franklin's body remained on the pavement. Roeske then tased Franklin a second time, 9 seconds after the initial shot. Franklin rolled over, which Roeske interpreted as an attempt to disconnect the wires. Roeske tased Franklin a third time—16 seconds after the initial shot; Franklin was still on the ground. Each time the taser was active for 5 seconds. Franklin was taken into custody. A breathalyzer administered at the police station indicated that his blood alcohol level was .100. Franklin was charged with crimes including assault, obstructing police, operating a vehicle under the influence of alcohol, and fleeing/eluding police. The case was taken to trial and Franklin was acquitted by a jury of all charges.

### B. Procedural History

Franklin filed suit against the City of Southfield, Police Chief Eric Hawkins, and Police Officer Gregory Roeske on August 29, 2016. He alleged municipal and individual liability claims under the Fourth and Fourteenth Amendments for excessive force and unlawful arrest. On March 29, 2018, the district court dismissed claims against the City of Southfield and Chief Hawkins. Officer Roeske filed a motion for summary judgment on Franklin's remaining claims—excessive force and false arrest allegations against him—on the basis of qualified immunity. On June 6, 2019, the district court held a hearing on Roeske's summary judgment motion, where it granted Roeske's motion on the false arrest claim, but denied qualified immunity as to excessive force. Roeske filed this interlocutory appeal challenging the district court's denial of qualified immunity.

## II. JURISDICTION

Before reaching the merits of this appeal, we must assess whether we have jurisdiction to hear it. We are authorized to hear appeals only from "final decisions" of the district court. 28 U.S.C. § 1291. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). But this is a narrow exception. *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018). We have jurisdiction to review claims of qualified immunity only to the extent that the defendants limit their argument to purely legal questions. *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019). "Once a defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial." *Berryman v. Rieger*, 150 F.3d 561, 564-65 (6th Cir. 1998). Defendants may not appeal denial of a motion for summary judgment based on qualified

immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995).

In two limited circumstances, we retain jurisdiction over a denial of qualified immunity involving disputed facts challenged on interlocutory appeal. First, "we may overlook a factual disagreement if a defendant, despite disputing a plaintiff's version of the story, is 'willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Adams v. Blount Cty., Tenn.*, 946 F.3d 940, 948 (6th Cir. 2020) (quoting *Barry*, 895 F.3d at 443). Second, we may decide an appeal involving disputed facts in the exceptional circumstance that a district court's factual determination is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (relying on video that captured the incident in question because it "utterly discredited" the plaintiff's version of events).

To determine the scope of our jurisdiction, we "separate an appellant's reviewable challenges from its unreviewable." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 610 (6th Cir. 2015). We retain jurisdiction over "pure question[s] of law, despite the defendants' failure to concede the plaintiff's version of the facts." *Livermore ex el Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). In deciding such questions, we "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *DiLuzio*, 796 F.3d at 611 (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)). We "need look no further than the district court's opinion" for the facts and inferences that precipitate the legal question at hand. *See Barry*, 895 F.3d at 443.

In this case, the district court ruled from the bench on Roeske's entitlement to qualified immunity regarding Franklin's excessive force claim. It held, in full:

> I want to go to what I think is the basic issue in this case, which I think is the excessive force issue. I have viewed, and viewed, and reviewed that video, and I

> think that there is a question of fact. I think clearly that officer's use of that hand motion creates an issue of fact. What could the plaintiff be thinking? I mean, he could be thinking, you know, come here, maybe I'm going to pat you down. I don't know what he's thinking, but when you look at it, I could see objectively how a reasonable person could say that is come towards me. On the other hand, I see the officer's position; what officer is going to say come closer to me? I mean, I do see both sides, but I think it creates in this case a question of fact for the jury to determine, so for that reason the motion is denied on that issue.

Roeske does not concede the view of the facts most favorable to Franklin; instead, he asserts that we have jurisdiction because the district court applied the wrong rule of law and because the district court's conclusion that there remained a dispute of material fact was contradicted by the video evidence. *Harris*, 550 U.S. at 380.

Qualified immunity insulates "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Goodwin v. City of Painesville*, 781 F.3d 314, 320-21 (6th Cir. 2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). In the excessive force context, we first ask whether, when viewing the facts in the light most favorable to Franklin, Roeske's actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397 (1989); *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). We assess "'reasonableness at the moment' of the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Goodwin*, 781 F.3d at 321 (quoting *Graham*, 490 U.S. at 396). The *Graham* Factors guide this analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

If a constitutional violation is found, the second step is to ask whether "the right was clearly established at the time of the alleged violation." *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012). It was well established at the time of the incident that Franklin possessed a right to be free of excessive force—and from being tased—if he was compliant with Roeske's instructions "or had stopped resisting." *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004); *Cockrell v. City of Cincinnati,* 468 F. App'x 491, 496 (6th Cir. 2012) (collecting cases).

In this case, both prongs of the qualified immunity analysis hinge on disputes of material fact that are not conceded and that remain unresolved by the video. If, in fact, Roeske's gesture was for Franklin to walk forward, a jury may find that, from the perspective of a reasonable officer, it was not objectively reasonable to tase him. Whether Franklin complied with instructions is also a dispute of material fact, as is whether Roeske issued accompanying verbal instructions. Furthermore, we must assess the objective reasonableness of each taser deployment separately. *See*, *e.g.*, *Champion*, 380 F.3d at 902; *Goodwin*, 781 F.3d at 323. And there remains a question of fact as to whether Franklin's actions after he was dropped by the first taser were sufficient to make the second and third use of the taser objectively reasonable. Additional factual clarity is also needed before we can assess whether Roeske violated clearly established law, as it is axiomatic (as it was in 2013) that tasing a person who complies with police instructions—or who is not resisting arrest—violates the Fourth Amendment. *See*, *e.g.*, *Hagans*, 695 F.3d 509. Because the resolution of facts in dispute is necessary to resolve either prong of the qualified immunity inquiry as a matter of law, we do not have jurisdiction to hear this appeal.

Roeske contends that by asking, "[w]hat could the plaintiff be thinking?" the district court committed a legal error that led it to view the facts through an improper lens. It is true that we

assess whether a constitutional violation occurred from the "perspective of a reasonable officer on the scene," not the subjective understanding of the plaintiff. *Graham*, 490 U.S. at 396. But, as shown above, we view the facts in the light most favorable to the plaintiff. Here, the district court rightly considered the impact of Roeske's hand gesture on that calculus. The gesture is relevant to a reasonable officer's perspective. That the district court did not restate that the qualified immunity inquiry is to be conducted from the perspective of a reasonable officer does not revive our jurisdiction to hear this appeal. There is no way to decide this case as a matter of law without resolving disputed facts.

### III.    CONCLUSION

For the foregoing reasons, we **DISMISS** this case for lack of jurisdiction.