NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0306n.06

No. 21-6185

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LOGAN L. COUCH, | ) | |
| Plaintiff - Appellee, | ) ) | |
| | ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| BRANDON BROOKS, | ) ) | |
| Defendant - Appellant. | ) ) ) | |
| | ) | |

Before: BATCHELDER, WHITE, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant, Brandon Brooks, appeals the denial of his motion for summary judgment based on qualified immunity, arguing that the record irrefutably demonstrates that he accidently dislodged the hotpot that allegedly caused burn injuries to Plaintiff-Appellee, Logan Couch, and therefore did not violate Couch's Fourteenth Amendment right to be free from excessive force or Kentucky law. Because Brooks fails to concede an interpretation of the facts in the light most favorable to Couch—that Brooks actually threw the hotpot—and Couch's version of the facts is not blatantly contradicted by the record, we DISMISS for lack of jurisdiction.

I.

In 2020, Couch was a pretrial detainee at the Grayson County Detention Center (GCDC) in Leitchfield, Kentucky. On November 9, Brooks went from cell to cell, collecting razors from

inmates, but inmates in Couch's cell refused to return theirs. According to Couch, as recounted by the district court, the following then transpired:

> Brooks (J-94) approached the door of Grey Cell 298 in the [GCDC] . . . and instructed all offenders, while pointing his jail issued taser gun, to sit down. Officer Brooks then entered Grey Cell 298 and began aggressively yanking, with excessive force, on the television cords causing the cords to break from [their] connections. Officer Brooks then grabbed a hotpot (a[n] electrical device with a [cylindrical] pitcher attached used for boiling water) and threw it, in anger, hitting a[n] inmate by the name of Marvin C. Norris. The hotpot was full of boiling water and the contents of the pitch[er] all landed on [me and Norris]. . . . Both inmates . . . suffered 3rd degree burns on the right arm. Officer Brooks then continued to scream insults and point his taser gun at inmates. While Officer Brooks continued his angry [tirade] other Officers remained at the door of Grey Cell 298. It was later discovered that names of these other Officers were Bobby Oldham (J-54), Deputy Dotson (J-96), and Deputy Captain John Doe, who refused to give his name or badge number. [Norris] was then taken to be seen by medical. [I] was initially ignored of [my] injuries, after informing and trying several times to show the Officers [my] burn injuries. . . . [Later] Officer Bobby Oldham (J-54) escorted [me] to medical care where [I] was seen by Nurse Desiree Walton (J-15) regarding the medical request form. [Walton] (J-15) applied burn ointment and applied a bandage to the burn. [I] was then escorted back to Grey Cell 298 by Bobby Oldham (J-54).

R. 53 PID 338–39. Couch's burn allegedly "required treatment for two weeks and left a permanent scar." R. 53 PID 345.

Brooks tells a different story. After taking the television cords and leaving the cell, he went to the office of Bo Thorpe, who, as Chief Deputy Jailer, was in charge of investigating incidents involving inmates. Brooks reported that he had "dislodged [the hotpot] from its location on the shelf next to the television," the hotpot landed on Norris's mat, and Norris "flung it away from him." R. 47-2 PID 297. Thorpe ordered incident reports from all staff who had responded to the incident. Oldman—the only staff member to witness it—confirmed Brooks's account. No audio or video recording of the incident was available for review, and no inmates from Cell 298 were interviewed. Thorpe concluded that Brooks was "justified in disabling the television due to the actions of several inmates in Cell 298," the "spilling of the hotpot was accidental," and any

injury suffered by Couch was "the result of inmate Norris' slinging the hotpot across the cell." R. 47-2 PID 299–300.

On November 30, 2020, Couch filed a verified complaint, alleging several claims against Brooks and other defendants. After screening the complaint pursuant to 28 U.S.C. § 1915A, the district court allowed three claims against Brooks to proceed: a Fourteenth Amendment excessive-force claim, and state-law claims of assault and negligence.[1] Brooks moved for summary judgment, arguing, as relevant here, that he is entitled to qualified immunity under both federal and Kentucky law.

The district court denied summary judgment. Taking Couch's recitation of the facts as true, the district court determined that a reasonable factfinder could find that Brooks recklessly threw a hotpot full of boiling water near Couch in Cell 298 and, thus, could find that his use of force was excessive in clear violation of the Fourteenth Amendment. The district court also concluded, under Kentucky law, that throwing a hotpot full of boiling water near Couch was not an act done in "good faith," given that "any reasonable person would have recognized the potential danger in this action." R. 53 PID 349–50. Brooks appealed.[2]

---

[1] Claims against two other defendants, Dotson and Oldham, also survived dismissal at this stage but were subsequently dismissed at summary judgment.

[2] On December 10, 2021, Brooks served notice that he was appealing the "Memorandum Opinion and Order entered December 6, 2021 denying Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment excessive force claim against . . . Brooks." R. 55 PID 351. On January 12, 2022, Brooks filed an amended notice, stating that he was appealing the "Memorandum Opinion and Order entered December 6, 2021 denying Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment excessive force claim *and* state law assault and negligence claims against . . . Brooks." R. 58 PID 358 (emphasis added). Couch argues that we lack jurisdiction to decide whether Brooks is entitled to qualified immunity under Kentucky law because this ground for appeal was specifically omitted in the first notice and raised only in the amended notice, but the latter was filed more than thirty days after the district court issued its order. Because we conclude that we lack jurisdiction for a separate reason, as explained *infra*, we need not decide this question.

II.

An order denying qualified immunity at summary judgment is immediately appealable under the collateral-order doctrine, *Mitchell v. Forsyth*, 472 U.S. 511, 525–27 (1985), but our jurisdiction is narrow. We may consider only "the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). A defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995); *see also Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018) (stating that we may often simply "adopt the district court's recitation of facts and inferences" and look no further). Said another way, "if what is at issue in the appeal is nothing more than 'whether the evidence could support a finding that particular conduct occurred,' there is no appellate jurisdiction because that question is inseparable from the merits of the plaintiff's claim." *Berryman*, 150 F.3d at 563 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

Thus, for "an interlocutory appeal based on qualified immunity to lie, the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case." *Id.* at 562. If, however, the defendant contradicts the plaintiff's "version of the facts at every turn," contests "what really happened," or challenges "the quantity and quality" of the plaintiff's evidence, "the narrow boundaries of our jurisdiction prevent us from proceeding any further" and "the case should proceed to trial." *Id.* at 564–65; *see Bunkley v. City of Detroit*, 902 F.3d 552, 559–60 (6th Cir. 2018) (providing examples of "types of prohibited fact-based ('evidence sufficiency') appeals," including challenges to the plaintiff's

allegations of what actually occurred or whether the evidence could support a jury's finding that particular conduct did occur).

III.

Brooks does not challenge, as a matter of law, whether throwing a hotpot full of scalding water in a cell full of inmates—which Couch alleges Brooks did—may constitute excessive force in clear violation of the Fourteenth Amendment, or demonstrate a lack of good faith by a Kentucky official. Rather, Brooks argues only that the evidence Couch submitted is not "enough" to create a question of fact regarding whether Brooks threw the hotpot, while the evidence Brooks submitted "unequivocally" shows that the hotpot was not thrown by Brooks, it "accidently fell," and Couch's "alleged injuries, if any, were caused by another inmate throwing the hotpot." Brooks Br. at 17, 22, 25.

Brooks's argument merely challenges the quantity and quality of Couch's evidence, contests Couch's version of what happened in Cell 298, and asks us to believe his version over Couch's. Because Brooks decidedly fails to overlook any factual disputes and concede an interpretation of the facts in the light most favorable to Couch, we lack jurisdiction to decide whether Brooks is entitled to qualified immunity. *Berryman*, 150 F.3d at 564–65; *Barry*, 895 F.3d at 444 ("[W]e would have jurisdiction if O'Grady argued that he wins even when we view the facts—as we must—in a light favorable to Barry. He does not."); *Gholston v. Wayne Cnty. Airport Auth.*, 574 F. App'x 632, 637–38 (6th Cir. 2014) ("Ultimately, the parties' accounts conflict, and the officers have not agreed to Gholston's version for the purposes of this interlocutory appeal. With key facts in dispute, we cannot reach the legal matter of the officers' entitlement to qualified immunity."). For the same reason, although the collateral-order doctrine extends to denials of qualified official immunity under Kentucky law, *see Clemons v. Couch*, 768 F. App'x 432, 438–

-5-

39 (6th Cir. 2019), we lack jurisdiction to decide whether Brooks is entitled to it, *Range v. Douglas*, 763 F.3d 573, 581–82 (6th Cir. 2014) (stating that a defendant must concede the most favorable view of the facts to the plaintiff for the court to exercise jurisdiction over an interlocutory appeal of a denial of state immunity).

In his reply brief, Brooks invokes *Scott v. Harris*, 550 U.S. 372 (2007), which "recognized an apparent exception to this jurisdictional limitation." *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009). In *Scott*, the Supreme Court stated that when a plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380. Brooks claims this is the case here, contending that Couch presents "no evidence" to show that Brooks threw the hotpot—no "affidavit, deposition testimony, or recorded statement," only allegations in a verified complaint—and, consequently, we have jurisdiction to decide whether Brooks is entitled to qualified immunity under federal and Kentucky law because the district court erred in accepting Couch's version of events as true. Reply at 7, 10. We are unpersuaded.

Brooks overlooks that a complaint verified as true under 28 U.S.C. § 1746 has "the same force and effect as an affidavit and would give rise to genuine issues of material fact" for purposes of summary judgment, *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (per curiam); *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008), and Couch's verified complaint states that Brooks threw a hotpot full of boiling water in Cell 298. Couch also submitted a sworn declaration in response to Brooks's summary-judgment motion, stating essentially the same. Thus, Couch puts forward evidence to dispute Brooks's version of the facts and create a genuine issue for trial. *Cf. Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (reaching the merits when the

district court made a factual inference "not based on the record evidence, but on a lack of evidence"); *Rodriguez v. City of Cleveland,* 439 F. App'x 433, 455 (6th Cir. 2011) (reaching the merits when a plaintiff "put forth no evidence").

Further, there is no objective evidence in the record, e.g., video or audio surveillance, that blatantly contradicts Couch's version of the event. *Cf. Scott*, 550 U.S. 378–81; *see also Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014) (stating that conflicting testimony is not the type of evidence that utterly discredits the plaintiff's version of the facts); *Roberts v. Coffee County*, 826 F. App'x 549, 556 (6th Cir. 2020) ("Because Roberts's testimony is itself evidence that the incident occurred, his testimony creates a genuine dispute of material fact."). Here, with only "dueling accounts of what happened" and Brooks "acknowledging on appeal only [his account], the underlying basis for an interlocutory appeal disappears." *Romo v. Largen*, 723 F.3d 670, 678 (6th Cir. 2013) (Sutton, J., concurring in part and concurring in the judgment).

In sum, at this stage of the proceedings, and given Brooks's argument, we have no jurisdiction to review the district court's denial of qualified immunity to Brooks under federal or Kentucky law.

**\*\*\***

For the foregoing reasons, we DISMISS this case for lack of jurisdiction.