NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0143n.06

No. 23-5384

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BAILEY WHITE, as Administrator of the Estate of Shandle Marie Riley, deceased,<br><br>        Plaintiff - Appellee,<br><br>v.<br><br>HAMILTON COUNTY, TENNESSEE; JACOB GOFORTH,<br><br>        Defendants,<br><br>DANIEL CAMERON WILKEY, in his individual and official capacity as a Deputy Sheriff for Hamilton County Government,<br><br>        Defendant - Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **FILED**<br>Mar 25, 2024<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE<br><br>OPINION |

---

Before: KETHLEDGE, BUSH, and READLER, Circuit Judges.

JOHN K. BUSH, Circuit Judge. This case arises from a traffic stop that ended like no other of which we are aware. Deputy Daniel Wilkey stopped Shandle Marie Riley, suspecting that the window tint on her car was too dark. By the end of their encounter, Wilkey and Riley were discussing religion, which led to the deputy's baptizing the suspect in a lake.

Riley then brought suit, claiming that Wilkey had violated her First and Fourth Amendment rights. Riley was deposed but subsequently died in circumstances unrelated to this case. The administrator of her estate, Bailey White, continued the suit in Riley's stead. Wilkey sought qualified immunity against White's claims, which the district court denied. We dismiss for lack of jurisdiction.

The stop occurred on the evening of February 6, 2019. During the stop, Riley told Wilkey that she had a marijuana roach in her car. Wilkey asked her to step out of her car, briefly searched her person, then placed her in handcuffs as he searched the vehicle. While this took place, Wilkey and Riley began to discuss religion, and Wilkey asked Riley if she wanted to be baptized. Riley expressed some hesitation but, according to her testimony, agreed to be baptized after Wilkey said that he would only write her a citation and that he would speak on her behalf in court if she agreed. She testified she was afraid of "go[ing] to jail." Riley Dep., R. 625-1, PageID 7271. They drove separately to a nearby lake, where Wilkey baptized her.

Riley then sued Wilkey and others under 42 U.S.C. § 1983, alleging, among other things, that her baptism violated her First Amendment Establishment Clause right to be free from religious coercion and Fourth Amendment right against unreasonable seizures. Wilkey eventually moved for summary judgment on the grounds that, because he did not violate any of Riley's clearly established constitutional rights, qualified immunity insulated him from § 1983 liability. After Riley passed away, the administrator of her estate, Bailey White, was substituted as a real party in interest. The district court denied his motion as to three of White's constitutional claims, finding that genuine fact disputes existed as to whether Wilkey violated Riley's First and Fourth Amendment rights. Wilkey now appeals the district court's denial of qualified immunity from the unreasonable seizure and First Amendment claims.

While we ordinarily lack jurisdiction over appeals challenging the denial of summary judgment, we may hear interlocutory appeals of summary judgment orders denying qualified immunity. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008) (citing 28 U.S.C. § 1291). But a "defendant seeking to invoke a qualified immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets

forth a genuine issue of fact for trial." *Anderson-Santos v. Kent Cnty.*, 94 F.4th 550, 553 (6th Cir. 2024) (cleaned up) (quoting *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995)). Instead, a defendant "may invoke our jurisdiction by conceding the plaintiff's version of the facts" to argue that "even assessing the facts in the light most favorable to the plaintiff, there was no violation of the plaintiff's clearly-established rights." *Id.* at 554 (citing *Berryman v. Rieger*, 150 F.3d 561, 562–63 (6th Cir. 1998)). If a "defendant purports to concede the plaintiff's view of the facts but in effect still litigates the factual dispute," however, we lack jurisdiction over the interlocutory appeal denying qualified immunity. *Id.* at 555.

Wilkey purports to concede White's version of the facts. But the arguments made in his appeal demonstrate that his concession is "a concession in name only." *Id.* at 554. A few examples suffice. For White's Fourth Amendment unreasonable seizure claim, the district court—citing Riley's deposition testimony—concluded that a genuine fact dispute existed as to whether a reasonable person in Riley's position would have felt free to leave her interaction with Wilkey, enabling a jury to find that Wilkey seized her for purposes of the baptism. Rather than truly conceding White's version of the facts, however, Wilkey offers more testimony from Riley to show "the full context . . . [of] just how voluntary Riley thought this interaction was." Appellant Br. at 14–15 n.3. Further, Wilkey summarily refers to the facts to explain why, in his view, he "was justified in thinking that" he "was engaging in a wholly private affair" with Riley. Appellant Br. at 17. This argument makes either a competing inference or a credibility determination, neither of which grants us jurisdiction over his interlocutory appeal. *Barry v. O'Grady*, 895 F.3d 440, 443–44 (6th Cir. 2018) (explaining that an appellant's attempt to "draw inferences in his favor" and failure to "explain why any of the district court's conclusions were blatantly and demonstrably false" do not confer jurisdiction); *Berryman*, 150 F.3d at 564 (explaining that a defendant cannot

3

merely make adverse "credibility determinations" or present evidence to contradict the plaintiff's "version of the facts" to confer jurisdiction in an appeal of the denial of qualified immunity).

For White's First Amendment Establishment Clause claim, the district court concluded that a genuine fact dispute existed as to whether Wilkey coerced Riley into participating in the baptism. According to Riley's testimony, she agreed to be baptized because she did not "want to go to jail" and "would much rather get baptized in freezing cold water than go to" jail. Riley Dep., R. 625-1, PageID 7271, 7281. With these facts, the district court determined that a reasonable jury could conclude that Wilkey's issuing Riley a citation rather than arresting her, conditioned on her baptism, could amount to religious coercion. But Wilkey resists that determination by arguing that Riley could never have been forced to participate because she admitted to being "a grown woman" who knew "that [she] didn't have to do it." *Id.*, PageID 7288. Wilkey hardly "assess[es] the facts in the light most favorable to" Riley by emphasizing Riley's literal ability to decline to participate while deemphasizing the pressure Riley felt to be baptized. *Anderson-Santos*, 94 F.4th at 554.

At bottom, the district court, considering the available record, concluded that genuine fact disputes existed as to whether Wilkey seized or coerced Riley through the baptism. Wilkey, by depicting the facts differently on appeal, disputes the district court's factual determinations for his qualified immunity defense, which "are the exact disputes of material fact . . . that the district court relied upon in denying the motion for summary judgment." *Id.* By not wholly accepting White's view of the facts, Wilkey prevents us from hearing this interlocutory appeal, which we must dismiss for lack of jurisdiction.