NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0312n.06

Case No. 21-5710

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| GAIL HARNESS, | ) | |
| Plaintiff - Appellant, | ) ) ) | **FILED** Jul 12, 2023 DEBORAH S. HUNT, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| ANDERSON COUNTY, TENNESSEE, | ) ) | |
| Defendant - Appellee. | ) ) ) | OPINION |

Before: CLAY, WHITE, and THAPAR, Circuit Judges.

WHITE, Circuit Judge. Gail Harness sued Anderson County, Tennessee, claiming that she experienced a hostile work environment while working for the county's circuit-court clerk, William Jones. Although the jury found that Harness proved sexual harassment, it did not find the county liable. Harness appeals, arguing that the district court gave erroneous jury instructions. We agree and REVERSE and REMAND.

**I.**

Jones was elected clerk of the Anderson County Circuit Court in September 2014 and hired Harness as an intern in January 2016. When Harness started, Jones instructed another employee to tell her the dress code was "tighter and shorter" because "that's what daddy likes." R.146, PID 3768. This was the beginning of a pattern of persistent harassment, with Jones touching Harness inappropriately at the office and sending her numerous lewd messages, such as "[a] single kind

word or photo of your boobs can make somebody's day" and "[s]ince you don't gag does that mean I can cum in the back of your mouth." R. 147, PID 3975, Ex. 33; R. 147, PID 4070.

The county had received complaints about Jones, including from a woman who reported that Jones watched her eat and told her that "he had a fetish for women eating yogurt." R. 38-1, PID 243. The county's human-resources director spoke to Jones after the yogurt incident, but Jones said the county could do nothing and asserted that he could even masturbate openly at work if he wanted. The human-resources director also spoke to the county's mayor, who said nothing could be done.

Despite the harassment, Harness enjoyed her job and needed money for her family, so she accepted a full-time position in August 2016. But on the advice of a friend, she reported Jones's harassment to the county in August 2017. After reporting, she was placed on an unrequested leave until being reassigned several months later.

Harness sued Jones and Anderson County. Counts 2 and 3, two of her claims against the county, are now before us.[1] Count 2 alleged a hostile work environment under 42 U.S.C. § 1983, in violation of the Equal Protection Clause. Count 3 alleged a hostile work environment in violation of the Tennessee Human Rights Act ("THRA"). For Count 2, Harness sought to present three theories of municipal liability to the jury: 1) that Jones was a final policymaker for the county, 2) that the county had a policy of inadequate training or supervision, and 3) that the county had a custom of tolerating violations of federal rights. *See Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (explaining that a § 1983 plaintiff suing a municipality must show how a "policy or custom cause[d] the constitutional violation in question").

---

[1] Count 1, against Jones, was dismissed without prejudice pursuant to an agreement between her and Jones. Harness also had a fourth claim against the county for retaliation that was dismissed with prejudice.

The court denied a jury instruction on the first theory because it found that Jones was a state actor. The judge also repeatedly stated during the instructions that Jones was a state official, not a county official, and instructed that, for both counts, Harness needed to prove that the county had some knowledge or notice that Jones was harassing Harness.[2] Harness objected to these aspects of the instructions, as well as the denial of her requested final-policymaker instruction.

The jury found for the county on Counts 2 and 3, finding specifically that Harness was subjected to sexual harassment but that she failed to prove that the county should have known about the harassment, had a custom of tolerance or acquiescence, had a custom of failure to train its officers or employees, or that a custom of the county was the moving force for the violation of Harness's rights.

Harness argues on appeal that the district court erred in denying the final-policymaker instruction for Count 2, in instructing for both counts that Harness needed to prove that the county had some notice or knowledge that Jones was harassing her, and in repeatedly stating during the instructions that Jones was a state official.

**II.**

We review whether jury instructions correctly state the law de novo, but "[a] party is not entitled to a new trial . . . unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966

---

[2] Count 2's instruction said that the jury needed to find that the county "knew or should have known about the harassment and failed to act," R. 151, PID 4579, and Count 3's instruction said that the jury needed to find that the county "had notice of the sexual harassment and hostile work environment or unreasonable interference with [Harness's] work performance," *id.* at PID 4584.

(6th Cir. 1998).  We review for abuse of discretion a district court's decision to deny a requested jury instruction.  *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 445 (6th Cir. 2005).

## III.

We start with the district court's decision to deny the final-policymaker instruction.  "[A] district court's refusal to give a jury instruction constitutes reversible error if: (1) the omitted instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case."  *Williams*, 397 F.3d at 445.

## A.

Harness argues that the final-policymaker instruction was a "correct statement of law" because, under Tennessee law, Jones acted as a final policymaker in the context of personnel matters for the clerk's office.  Reviewing this legal determination de novo, we agree.  *See Dunaway v. Moore*, 78 F.3d 584, at *5 (6th Cir. 1996) (Table).

A plaintiff suing a municipality under § 1983 must show that she experienced a constitutional injury as the result of an official municipal policy.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986) (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  This can be shown by proving that the official who caused the harm was a final policymaker for the municipality.  *Id.* at 479-81.  To be a final policymaker, the official must "possess[] final authority to establish municipal policy with respect to the action ordered."  *Id.* at 481.  This is a legal question that turns on the official's status under state law.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989), *superseded by statute on other grounds*, 42 U.S.C. 1981(c).

A plaintiff needs to show that the official acted as a final policymaker "in [the] particular area" relevant to her claim.  *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997).

Consequently, courts often consider whether an individual who is in some sense a state official nevertheless exercised final policymaking authority as a county actor. In *McMillian*, the Court affirmed the decision that an Alabama county sheriff acted as a state official in his law-enforcement duties because the county had no law-enforcement authority. *Id.* at 784. It was "[c]ritically" persuasive that the state supreme court had found in a separate case that the framers of the state constitution meant for "sheriffs to be considered executive officers of the state," not county officials. 520 U.S. at 789.

Unsurprisingly, the foregoing analysis mirrors the inquiry for determining whether an actor is a state versus local official and thus entitled to sovereign immunity. *See Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015). For this inquiry, "[i]mmunity hinges on whether the officer represents the [s]tate in the 'particular area' or on the 'particular issue' in question," which "depends on how state and local law treat the officer in that setting." *Id.* (quoting *McMillian*, 520 U.S. at 785). We consider several factors:

> (1) the [s]tate's potential liability for a judgment; (2) how state statutes and courts refer to the officer; (3) who appoints the officer; (4) who pays the officer; (5) the degree of state control over the officer; and (6) whether the functions involved fall within the traditional purview of state or local government.

*Id.* In *Crabbs*, an Ohio sheriff acted as a county official in the domain of law enforcement and jail management because the county would cover a judgment against the sheriff; Ohio law deemed county sheriffs county officials; county voters chose sheriffs; counties paid sheriffs and funded their offices; county boards had final authority over the sheriff's budget; and "[a] sheriff's law enforcement duties at common law represented local functions." *Id.*

There is no dispute that Jones exercised final decision-making authority over personnel matters for the clerk's office. The district court found that Jones exercised final authority, R.150,

PID 4439 ("I don't think there's any dispute that Mr. Jones is a final policymaker."), and the county conceded as much when arguing before this court, Oral Arg. 22:03-22:58 ("Yes, I agree that he's over the personnel in that office."). Further, the county's former human-resources director testified that Jones opted out of the county's sexual-harassment policy and so Jones's policies were "all that mattered" for his office. R. 147, PID 3994-95. Accordingly, the question is whether, with regard to personnel matters, Jones acted as a county or state official. If the former, Jones is a final policymaker for the county, and Harness's § 1983 suit can proceed; if the latter, he is a policymaker for the state.

We conclude that Jones acted as a county official in the context of personnel management for the circuit-court clerk's office. Most importantly, the Tennessee Supreme Court has already held that circuit-court clerks are county officials and reached this conclusion based on characteristics that Jones shares. *State ex rel. Webster v. La Bonte*, 597 S.W.2d 893, 894 (Tenn. 1980). Specifically, the state court found that several factors mattered: "who pays the officer's salary; who pays the expenses incurred by the office; who is entitled to any fees collected by the office; whether there was legislative intent that the office have jurisdiction outside the county; and whether the 'overall duties are applicable to the people of the county alone.'" *La Bonte*, 597 S.W.2d at 894 (quoting *Durham v. Dismukes*, 333 S.W.2d 935, 938 (Tenn. 1960)). Comparing that case with this one, just as was true for the circuit-court clerk in *La Bonte*, the county pays Jones's salary and his office's expenses, the county is entitled to his office's fees, and his position is confined to the county. *See* T.C.A. § 16-2-506(7)(A). Accordingly, *La Bonte* strongly suggests that Jones acted as a county official.[3]

---

[3] The county suggests that we dismiss *La Bonte*'s relevance because it was decided several decades ago and was a *quo warranto* action. *McMillian* makes clear that a state supreme court's view carries special weight for analyzing whether

Tennessee's statutes point in the same direction. Under Tennessee law, circuit-court clerks are listed as county officials, T.C.A. § 5-23-102, and must work with counties to adopt workplace policies, *see id.* §§ 5-23-103(a), 5-23-105 (explaining procedure by which officials must adopt workplace policies, subject to approval by an attorney retained by the county mayor). If a county official does not follow through in adopting a policy, which must cover non-discrimination and sexual harassment, *id.* § 5-23-104(3), "the employees of the county official shall be governed by the base personnel policies adopted by the county legislative body," *id.* § 5-23-103(a). This framework shows that, under state law, Jones acted as a county official because he was both listed as a county official and tasked with developing workplace policies for county employees, subject to county oversight.[4]

In reaching its decision, the district court relied on *McGill v. Smith*, in which a district court found that the plaintiff's theory of municipal liability failed because, that court concluded, a Tennessee circuit-court clerk was a state official and thus not a final policymaker. No. 1:05-CV-337, 2006 WL 8442315, at *5 (E.D. Tenn. Sept. 11, 2006). But *McGill* reinforces our conclusion because it concerned the clerk's failure to record a payment, which is a state function, as evidenced by the court's separate decision to grant sovereign immunity to the clerk. *Id.* at *2, *6. As discussed, the sovereign-immunity analysis concerns "whether [an] officer represents the [s]tate in the 'particular area' or on the 'particular issue' in question," and "[r]elevant factors include . . .

---

an official is a state actor. 520 U.S. at 789. The Tennessee Supreme Court addressed the exact question before us; we cannot overlook that simply because the case is not recent and the question was considered in a different context.

[4] We also note that the county did not exercise its authority to oversee Jones's development of workplace policies because it did not follow these statutory procedures or file an ouster suit, as it was also authorized to do. *See* T.C.A. §§ 8-47-101, 8-47-111. Instead, as the former human-resources director testified, Jones simply opted out of the county's sexual-harassment policy and his own policies were "all that mattered" for his office. R. 147, PID 3994-95. This fact pattern further demonstrates that Jones exercised county-level authority in setting personnel policies for the clerk's office.

the degree of state control over the officer" and "whether the functions involved fall within the traditional purview of state or local government." *Crabbs*, 786 F.3d at 429 (quoting *McMillian*, 520 U.S. at 785). The county in *McGill* had no control over the clerk's performance of the duties that were the subject of the suit, and those duties fell under the state's purview. *McGill*, 2006 WL 8442315, at \*5-6. By contrast, as noted, Anderson County had some control over Jones's personnel policies, and the establishment of such policies is inherently a county-level function. *See* T.C.A. §§ 5-23-103(a), 5-23-105; *cf. Ermold v. Davis*, 936 F.3d 429, 434 (6th Cir. 2019) (finding county clerk who denied marriage license immune in her official capacity because "[o]nly Kentucky [could] discipline county clerks" and the state had total jurisdiction over the regulation of marriage). Therefore, *McGill* supports the conclusion the Jones acted as a county official.[5]

**B.**

Given our conclusion that Jones was a final policymaker, we next consider whether the instruction was "substantially covered by other delivered charges" and whether its absence "impair[ed] [Harness's] theory of the case." *See Williams*, 397 F.3d at 445. Harness easily makes both showings.

The other instructions given failed to cover the requested instruction because the other § 1983 instructions concerned whether the county failed to train or supervise Jones and whether the county had a custom of constitutional violations. Those theories are distinct from the final-policymaker theory because they focus on wrongdoing by the county rather than Jones's own wrongdoing. The court instructed that the county was only liable if Harness "prove[d] . . . that [the county's] official policy or custom or lack of training caused" her constitutional injury. R.

---

[5] Additionally, we note that the plaintiff in *McGill* failed to "cite[] any relevant Tennessee statutes or case law showing that the [c]lerk" was a county official, and the court did not on its own cite *La Bonte*. *McGill*, 2006 WL 8442315, at \*5; *cf. McMillian*, 520 U.S. at 789 (finding state supreme court's view "[c]ritically" persuasive).

151, PID 4581. Thus, the jury's analysis would have been very different had the final-policymaker instruction been given because this addition would have allowed the jury to find the county liable based on treating Jones's misconduct as the county's official policy.

Extending this reasoning, we find it plain that the omission of the final-policymaker instruction hindered Harness's case. She would have had a much easier case if she could have presented Jones's misconduct as Anderson County's official policy. Indeed, the county concedes that the final-policymaker theory was Harness's "easiest course." Appellee's Br. at 20. We therefore conclude that the district court abused its discretion in denying the final-policymaker instruction.

## IV.

Harness also argues that the district court's jury instructions were incorrect because the court told the jury it needed to find that the county had some knowledge or notice that Jones was harassing Harness, and because the court repeatedly told the jury that Jones was a state actor, not a county official.

## A.

For Count 2, the district court instructed the jury that it needed to find that the county "knew or should have known about the harassment and failed to act," R. 151, PID 4579, and for Count 3, the court similarly instructed the jury that it needed to find that the county "had notice of the sexual harassment and hostile work environment or unreasonable interference with [Harness's] work performance," *id.* at PID 4584. Harness argues that the court erred by including these requirements because, she asserts, Jones was her supervisor and that means different legal standards apply.

"We review § 1983 discrimination claims brought under the Equal Protection Clause using the same test applied under Title VII," *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019), and

do the same for THRA harassment claims, *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)). The requirements for a Title VII claim differ according to whether harassment was by a coworker or supervisor because, when alleging harassment by a supervisor, a plaintiff "need not show that the employer had knowledge of the harassment." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009).[6] A supervisor is someone "empowered by the employer to take tangible employment actions against the victim," *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013), meaning actions that render "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *id.* at 429 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Harness is correct that the district court erred by instructing the jury that she needed to prove the county's knowledge of the harassment for her § 1983 and THRA claims. The evidence is overwhelming that the county "empowered" Jones "to take tangible employment actions" against her, given testimony about Jones's authority to "hir[e], fir[e]," and "reassign[]" employees. *Cf. id.* The county makes no argument otherwise. In this situation, the law is clear that a plaintiff does not need to prove the employer's knowledge of the harassment. *See Hickman v. Laskodi*, 45 F. App'x 451, 453 (6th Cir. 2002) (requiring § 1983 plaintiff who alleged "a hostile work

---

[6] Because, in the event of harassment by a supervisor, the Title VII framework premises employer liability on vicarious liability, *Barrett*, 556 F.3d at 516, this framework appears at first blush to be in tension with § 1983, which does not permit theories of vicarious liability for municipalities, *Pembaur*, 475 U.S. at 477. However, a § 1983 plaintiff suing a municipality must separately prove liability based on an official policy, so we do not impute vicarious liability by following Title VII's standards.

environment created by a supervisor" to establish all elements of a Title VII claim except for the employer's knowledge).

Nonetheless, the county argues that if Jones is Harness's supervisor, the county is entitled to assert the so-called *Ellerth/Faragher* defense.[7] *See Queen v. City of Bowling Green*, 956 F.3d 893, 897 n.4 (6th Cir. 2020) (citing *Ellerth*, 524 U.S. at 765; *Faragher v. City of Boca Raton*, 524 U.S. 775, 806-07 (1998)). This affirmative defense permits an employer to avoid liability for harassment by a supervisor if the employer proves: "(1) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Id.* But the county forfeited this defense by never raising it in the district court. *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 507 (6th Cir. 2022) ("[D]efendants can forfeit affirmative defenses when they inexplicably delay their assertion of those defenses."); *see also Horton v. Parker*, 369 F.3d 906, 911 (6th Cir. 2004) ("Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.").

The county's only argument against forfeiture is that the magistrate judge's pretrial order noted that the county "assert[ed] that it acted 'swiftly and appropriately' once [Harness] reported her complaints or concerns regarding Jones." Appellee's Br. 35 (citing R. 116, PID 796). But this does not solve the problem. At best, this shows that the county asserted a part of the *Ellerth/Faragher* defense: that the county "promptly" acted to "correct" the harassment. *See Queen*, 956 F.3d at 897 n.4. It says nothing about whether the county "exercised reasonable care

___

[7] Confusingly, the county only raises this argument in relation to the THRA claim and seemingly does not seek to invoke the defense in relation to the § 1983 claim.

to prevent" harassment or whether Harness "failed to take advantage of any preventative or corrective opportunities." *Cf. id.*

Although we find that the instructions were incorrect in this respect, we still must determine whether "as a whole" the instructions "[were] misleading or [gave] an inadequate understanding of the law." *Jones*, 144 F.3d at 966. A correct § 1983 instruction would have been that Harness needed to show:

> (1) She was subjected to unwelcome harassment; (2) The harassment was based on her gender; (3) The harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; (4) [She] was an employee of Anderson County, Tennessee.

R. 151, PID 4579 (cleaned up). And a correct THRA instruction would have been:

> (1) She was sexually harassed; (2) The sexual harassment created a hostile work environment or unreasonably interfered with [her] work performance; (3) The sexual harassment caused [her] physical or mental wellbeing to be seriously affected; . . . and (4) [The county] failed to take prompt and appropriate corrective action to eliminate the harassment.

R. 151, PID 4584 (cleaned up). These instructions become materially different with the addition of a requirement that Harness must prove, respectively, that the county "knew or should have known about the harassment and failed to act," *see id.* at PID 4579, or "had notice of the sexual harassment and hostile work environment or unreasonable interference with [Harness's] work performance," *see id.* at PID 4584. With the erroneous additions, jurors surely reasoned that they could only find the county liable if satisfied that Harness proved a completely different element. Thus, the instructions were "misleading," necessitating a new trial.

**B.**

Lastly, setting her final-policymaker theory aside and focusing on the alternative theories of municipal liability and the THRA, Harness argues that the district court erred by telling the jury

multiple times that Jones was not a county official.[8]  Given our conclusion that Jones *did* act as a county official, these statements were incorrect and should not be repeated at the new trial.

**V.**

For the reasons stated, we REVERSE and REMAND.

---

[8] Specifically, when introducing the parties to the jury, the court stated: "[T]he Clerk of Court position is a state creation, so the Clerk of Court is not an employee or official of [the county]." R. 151, PID 3947. And when explaining the elements for the failure-to-train theory, the court said, "Keep in mind that William Jones was the Clerk of Court, a state position, and was not an Anderson County official, officer, or employee"; then the court said shortly thereafter, "Again, remember that Jones was not an Anderson County officer, official, or employee." *Id.* at 3951.