NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0149n.06

No. 21-1278

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DOMINIQUE SLAYTON, | ) | |
| Plaintiff - Appellee, | ) | |
| v. | ) | **FILED**<br>Apr 07, 2022<br>DEBORAH S. HUNT, Clerk |
| CITY OF RIVER ROUGE, MICHIGAN, et al., | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants, | ) | |
| EDWARD OTIS, | ) | OPINION |
| Defendant - Appellant. | ) | |

Before: BOGGS, WHITE, and READLER, Circuit Judges.

BOGGS, J., delivered the opinion of the court in which WHITE, J., joined. READLER, J. (pp. 10–15), delivered a separate opinion concurring in part and concurring in the judgment.

BOGGS, Circuit Judge. Dominique Slayton led police on a high-speed chase through multiple jurisdictions in Wayne County, Michigan, culminating in his arrest—and, allegedly, in the unconstitutionally excessive use of force by pursuing officers. The officer who started the chase and ultimately arrested Slayton was Edward Otis of the River Rouge Police Department. Slayton then brought an excessive-force claim under 42 U.S.C. § 1983 against Otis, which is the subject of the sole issue on appeal: whether Otis is entitled to qualified immunity. The district court held that he was not.

Because Otis argues only that the district court erred in finding a genuine dispute of material fact as to whether he violated Slayton's constitutional rights, this appeal is purely fact-based. This court therefore lacks jurisdiction to hear the case under *Johnson v. Jones*, 515 U.S. 304 (1995), which limits us to purely legal questions in this type of appeal, and we dismiss.

**BACKGROUND**

The parties agree on this much:[1] At about 9:30 in the evening on January 2, 2016, Dominique Slayton was driving home with his girlfriend from a family function in Wayne County, Michigan. He suddenly swerved to avoid an unmarked black SUV driven by Officer Edward Otis of the River Rouge Police Department. Otis began to pursue Slayton and switched on his police lights; Slayton did not pull over and continued driving at a minimum of forty to fifty miles per hour. For more than ten minutes over eight miles, Slayton fled south along the Detroit River, out of River Rouge and into the downriver Michigan communities of Ecorse and Wyandotte, pursued all the while by Otis and other officers who joined the chase as Slayton entered their jurisdictions. Among these officers were Wyandotte's Benjamin Jones and Gerald Conz.

Eventually, Slayton reached a marina on the Detroit River behind (coincidentally) the Wyandotte police station. By this time he was alone. He left his car and entered the water, pursued closely by police officers. The river was cold that day, and Slayton quickly reemerged, at which point two officers ordered him to get down. Slayton struggled on the ground with multiple officers, including Jones and Conz, but was eventually handcuffed. Jones and Conz were assisted in the arrest either by Otis or by other officers; accounts conflict. Slayton was then carried face down to

---

[1] On appeal from the denial of summary judgment based on the denial of qualified immunity, "we often may be able merely to adopt the district court's recitation of facts and inferences," and, when the district court has not spoken, those facts most favorable to the nonmoving party—here, Slayton. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 611 (6th Cir. 2015).

Otis's car to be transported back to River Rouge. He arrived at the police station with injuries, including a nasal fracture, bruising, and a chipped tooth.

Apart from these bare facts, Slayton's account differs markedly from Otis's. The parties disagree on whether Slayton drove at forty or fifty miles per hour or as fast as ninety, whether Slayton tripped and fell into the river or jumped in to escape, whether he climbed out of the river under his own power or was dragged out by Jones and Conz, and even whether Slayton's girlfriend exited his vehicle before or during the chase. Most importantly, Slayton says he was kicked repeatedly after he was face down in handcuffs and identifies Otis as one of the officers who assisted Jones and Conz in the arrest. Otis denies any involvement and claims to have taken custody of Slayton after watching the river search and the arrest from afar.

During his deposition, Slayton provided a physical description of Otis—a Black, bald man in his mid-to-late thirties or early forties with a "big build"—identifying him as one of the officers nearest to him when he was being kicked, after he was in handcuffs.[2] Otis, in his deposition, testified that officers from Ecorse, Wyandotte, and River Rouge were already at the marina by the time he arrived, and that he had no involvement except to take custody.

---

[2] When asked if he knew which officers kicked him, Slayton testified, "I believe it was Otis and one of the other officers from Wyandotte, but I'm not sure which one." He believed that Otis kicked or hit him because Otis "was on [his] front side where [his] head was." When asked if he "kn[ew] for a fact Otis was there and . . . kicked [him]," Slayton responded, "Yes." Slayton also testified that he did not know which officers were on the right or left sides of his head; he "just kn[ew] [Otis] was the one who put [him] into the squad car" and was "one of the officers that helped carry [him]." When pressed on whether Otis in fact carried Slayton, Slayton responded, "Well, they had me by my back of my shirt, so I'm guessing he was one of the people carrying me" because "[h]e was on my right side" and "put me in the squad car." When asked whether he first saw Otis at the squad car, he responded, "It was—it was, I believe, at the car."

Because on appeal from denial of qualified immunity at summary judgment we must take factual matters as stated by the district court,[3] we incorporate the district court's recitation and assessment of the facts here. *See generally Slayton v. City of River Rouge*, 515 F. Supp. 3d 695 (E.D. Mich. 2021). The dispatch audio from the night in question independently confirms that numerous police vehicles pursued Slayton at a high rate of speed through River Rouge, Ecorse, and Wyandotte. *Id.* at 701. At some point during (not before) the chase, he let his girlfriend out of the car. *Ibid.* But the dispatch audio does not cover Slayton's arrest or his being carried to Otis's vehicle. The district court, for purposes of summary judgment, found that Slayton (1) did not resist the arresting officers after he was in handcuffs, (2) could not identify which officers committed which acts of force on him, but (3) adequately identified Otis, the officer "next to his head when he was kicked," as one of three officers around him "at the moment of the alleged constitutional violation." *Id.* at 703–06.

Slayton then filed a complaint in federal district court against Otis, Jones, and Conz; the Cities of River Rouge, Ecorse, and Wyandotte; and several other officers from those cities, not all of whom had been involved in the chase.[4] He alleged (against the cities) municipal liability for failure to properly train and supervise their police, and (against the individual officers) a single count of excessive force in violation of his Fourth Amendment rights under 42 U.S.C. § 1983. At the close of discovery, the parties dismissed by stipulation Slayton's claims against the City of

---

[3] *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018) ("[I]n most appeals of denials of qualified immunity, we must defer to the district court's determinations of fact. . . . Indeed, 'ideally we need look no further' . . . , and 'we often may be able merely to adopt the district court's recitation of facts.'" (quoting *DiLuzio*, 796 F.3d at 611)).

[4] Slayton filed two separate suits—one against River Route, Wyandotte, Otis, Brian Zalewski, Jones, and Conz (No. 17-13875), and another against Ecorse, James Frierson, Jarrod Fedea, William Marks, and Craig Cieszkowski (No. 18-13904). The district court consolidated the cases.

Ecorse and a number of the defendant officers. All remaining defendants then moved for summary judgment. The individual officers each asserted qualified immunity, while the cities argued that Slayton could point to no constitutional violation to support municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The district court granted summary judgment to the municipalities but denied it to the officers, concluding that they were not entitled to qualified immunity. *Slayton*, 515 F. Supp. 3d at 706–07. Specifically as to Otis, the court rejected his argument that his alleged actions were objectively reasonable and therefore that there could have been no violation, noting that through the lens of Slayton's factual allegations, "a jury could reasonably find that it was objectively unreasonable to kick or hit the Plaintiff while he was handcuffed face-down on the ground." *Id.* at 703. The court did not resolve one way or another whether Otis really *was* at Slayton's head when Slayton was kicked—it was enough that "the record facts viewed most favorably to the Plaintiff do not foreclose Plaintiff's version of events." *Id.* at 705.

The officer defendants had argued additionally that because Slayton could not identify which officer kicked him when, and because § 1983 liability requires each defendant to be "personally involved," they were entitled to qualified immunity.[5] *Id.* at 704. The district court found this argument unpersuasive. *Id.* at 706. The mere fact that Slayton was unable to identify which officers delivered which blows was not dispositive. *See id.* So long as Slayton alleged that each of the officers had engaged in *some* constitutional violation, and the circumstances causing him to be unable to identify them were out of his control, this court's precedents precluded a grant

---

[5] Otis in particular argued that Slayton "unequivocally confirmed [that] he does not know which officer allegedly kicked him"; that Slayton's "knowledge of Officer Otis' involvement in the altercation is limited to his observation of Officer Otis at the squad car"; and that the other officers "confirmed that Otis was not present during the physical altercation."

of qualified immunity. *Id.* at 705–06. The district court concluded by emphasizing that Officers Otis, Jones, and Conz had "failed to show a lack of outstanding material facts as to whether" each of them had violated Slayton's constitutional rights. *Id.* at 706.

Otis timely appealed. Slayton's claims against Jones and Conz were dismissed by stipulation of the parties following the decision on summary judgment, and Otis is now the sole defendant.

## ANALYSIS

"Where jurisdiction is appropriate, we review de novo the denial of summary judgment on the basis of qualified immunity." *Est. of Hill ex rel. Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017). Summary judgment should be denied when there is a genuine issue of material fact; that is, when the moving party is not entitled to judgment as a matter of law because there are factual questions that should first be resolved by a jury. Fed. R. Civ. P. 56(a). This standard, of course, requires us to "view[ ] all the evidence in the light most favorable to the nonmoving party and draw[ ] 'all justifiable inferences' in his favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). But we cannot reach an interlocutory appeal such as this until we assure ourselves that we have subject-matter jurisdiction. *See, e.g.*, *Klein v. Long*, 275 F.3d 544, 549–50 (6th Cir. 2001).

Federal courts of appeals have jurisdiction over appeals from "final decisions" of the district courts. 28 U.S.C. § 1291. But "'final' . . . does not necessarily mean the last order possible." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964). An otherwise interlocutory order may be considered final for purposes of appealability if it falls under the collateral-order doctrine, a "major characteristic" of which is this: "unless it can be reviewed before the proceedings terminate, it can never be reviewed at all." *Mitchell v. Forsyth*, 472 U.S. 511, 525

(1985) (alterations omitted) (citing *Stack v. Boyle*, 342 U.S. 1, 12 (1952)). Under the collateral-order doctrine, a district court's denial of qualified immunity is immediately appealable under certain circumstances. *Id.* at 530.

The Supreme Court in *Mitchell v. Forsyth* held a denial of qualified immunity to be an appealable collateral order "to the extent that [the denial] turns on an issue of law." *Id.* In *Johnson v. Jones*, ten years later, the Court addressed appealability of a qualified-immunity summary-judgment order that "determines only a question of 'evidence sufficiency'"—a "*fact*-related dispute." 515 U.S. at 313. Applying the collateral-order doctrine's justifications to fact-based questions, though, did not yield the same result. Because of the unique challenges of fact-based appeals[6] and *Mitchell*'s emphasis on law over facts, the Court held that the denial of qualified immunity at summary judgment on the ground that there is a genuine issue of fact is not immediately appealable.[7] *Id.* at 319–20.

---

[6] These included the difficulty of separating questions of evidence sufficiency from "the fact-related legal issues that likely underlie the plaintiff's claim on the merits," familiarity of trial judges (as opposed to appellate judges) with sorting through factual questions, the time-consuming nature of determining whether an issue of fact is "genuine," and the likelihood that affirming the district court will simply result in an *identical* factual question reemerging for the appellate court after trial. *Johnson*, 515 U.S. at 314, 316–17.

[7] In *Behrens v. Pelletier*, 516 U.S. 299 (1996), the Supreme Court explained:

> *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no "final decision" under [*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949),] and *Mitchell*. *Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity—typically, the issue of whether the federal right allegedly infringed was "clearly established."

*Id.* at 313 (citations omitted).

This court has explained that under *Johnson*, "we *cannot* decide disputed factual issues at the summary-judgment stage, and if the appeal from a denial of qualified immunity turns on an issue of fact, we *may not* exercise jurisdiction." *Barry v. O'Grady*, 895 F.3d 440, 443 (6th Cir. 2018) (emphases added). Under that "well-settled" standard, appealability rests on whether there is a "purely legal question" at issue. *Id.*

There are two exceptions. First, this court has jurisdiction over a fact-based appeal if "evidence in the record establishes that the [district court's] determination is blatantly and demonstrably false." *Ibid.* (internal quotation marks omitted); *see also Wysong v. City of Heath*, 260 F. App'x 848, 853 (6th Cir. 2008) (Boggs, C.J.) (holding that *Scott v. Harris*, 550 U.S. 372 (2007), exercising jurisdiction over a fact-based summary-judgment appeal after *Johnson*, allowed courts "to correct the rare blatant and demonstrable error" (internal quotation marks and alterations omitted)). Second, this court has the power to "ignore the defendant's attempts to dispute the facts" provided there is a purely legal issue to resolve and the defendant is "willing to concede the most favorable view of the facts to the plaintiff." *Barry*, 895 F.3d at 443 (citing *Est. of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005); *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002)). Thus, unless a fact-based qualified-immunity interlocutory appeal (1) challenges the district court's determination as blatantly and demonstrably false or (2) preserves a purely legal question *and* plaintiff's version of the facts, we have no jurisdiction.

Here, this court lacks jurisdiction to hear Otis's appeal, which must be dismissed. The facts in this case neatly match those in *Johnson v. Jones*. There, as here, the plaintiff brought a § 1983 excessive-force claim against officers who, he claimed, had beaten him after his arrest. *Johnson*, 515 U.S. at 307. Of the five officers sued in *Johnson*, three attempted to argue on appeal that the district court had improperly implicated them despite there being "not a scintilla of evidence that

one or more of them had ever struck, punched, or kicked the plaintiff." *Id.* at 307–08 (internal quotation marks and alterations omitted). But the Seventh Circuit reasoned, and the Supreme Court agreed, that a dispute amounting to a "contention that 'we didn't do it'" was factual—not legal—and thus could not be the basis of an appealable collateral order. *Id.* at 308, 313–17.

The briefing before us likewise couches the appeal in fact-based terms. Otis asks this court to decide a single question: "whether Slayton's testimony demonstrates his identification of Otis to be mere speculation." Br. of Appellant 4. This is not a legal claim, but a factual one, asking us to review the record and evaluate the facts differently than the district court did. True, Otis invokes the proper terminology, claiming to forsake any "dispute[ ] of fact" in favor of a "legal question" and reassuring us that he "cannot (and does not) dispute Slayton's version of the facts." *Id.* at 18, 23 (quotation marks omitted). But in the same breath, Otis pits Slayton's testimony against his own in an attempt to discredit and dismiss the former. *See id.* at 23–24 ("Slayton's identification of Otis as being near his head and kicking is merely speculation that cannot serve to create a genuine issue of material fact. . . . Moreover, Slayton's testimony is contrary to the unrebutted testimony of Officer Conz."). As noted above, this court is required at summary judgment to view the facts in the light most favorable to Slayton. When Slayton says one thing and Otis says another, the officer's "contention that '[he] didn't do it,'" *Johnson*, 515 U.S. at 308, raises an issue of evidence sufficiency that we cannot review at this juncture.

Because Otis asks this court only to resolve conflicts between Slayton's testimony and that of the officers, there is no purely legal question to confront, and jurisdiction does not lie to hear Otis's appeal.

**CONCLUSION**

For the reasons above, the appeal is **DISMISSED** for lack of jurisdiction.

CHAD A. READLER, Circuit Judge, concurring in part and concurring in the judgment. True enough, as the majority opinion explains, some of Officer Edward Otis's challenges on appeal are beyond our jurisdiction. But not all of them. Otis raises at least one legal question on appeal: whether the only evidence supporting the denial of summary judgment is inadmissible. As that question turns on the application of evidence law, not factual matters, we should answer it here. But because Otis's argument is meritless, I would affirm the district court's denial of summary judgment.

\*\*\*

Start with the basics on the proper scope of an interlocutory qualified immunity appeal. *Mitchell v. Forsyth* offers the first lesson. 472 U.S. 511 (1985). There, the Supreme Court recognized that a "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 530. Next came *Johnson v. Jones*, which limited *Mitchell*'s reach. 515 U.S. 304 (1995). After *Johnson*, appellate courts could not review on an interlocutory basis qualified immunity denials involving questions of "evidence sufficiency." *Id.* at 313. *Johnson* itself involved facts that are—at least, superficially—similar to today's case: defendant officers, having been sued over allegations of police brutality, disclaimed liability and argued that the district court erred in denying summary judgment. *Id.* at 307. On appeal, the officers made a single argument: the record lacked even a "scintilla of evidence" to warrant a trial over their involvement in the beating. *Id.* at 308. *Johnson* concluded that the availability of interlocutory appeals for questions regarding qualified immunity does not extend to wholly fact-based appeals over whether the non-movant presented enough evidence to survive summary judgment. *Id.* at 315–16.

By one interpretation, *Johnson*'s limits on our jurisdiction over "fact-based" questions could swallow *Mitchell*'s holding that qualified immunity appeals fall within the collateral order doctrine. "Facts," after all, "are crucial to every case." *Sevy v. Barach*, 815 F. App'x 58, 68 (6th Cir. 2020) (Readler, J., concurring). So giving *Johnson* a sweeping reading would extinguish our jurisdiction any time facts begin to bleed into the appellant's legal argument. *See Behrens v. Pelletier*, 516 U.S. 299, 312–13 (1996) ("Denial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable." (citation omitted)). That is why the Supreme Court, in the years since *Johnson*, has limited its scope to only those qualified immunity denials that involve "*purely* factual issues." *See Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014) (emphasis added); *see also Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (rejecting the argument that an examination of whether the evidence provided by the nonmoving party is "supportable by record" is a factual question beyond an appellate court's jurisdiction). Issues of that ilk relate to "what occurred[] or why an action was taken or omitted." *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011). Fairly read, then, *Johnson* stands for an important, but limited, principle: "[a]n officer may not appeal the denial of a qualified immunity ruling solely on the ground that the plaintiff's record-supported facts are wrong." *Barry v. O'Grady*, 895 F.3d 440, 446 (6th Cir. 2018) (Sutton, J., dissenting). In other words, so long as some aspect of an officer's appeal goes beyond the limited argument at issue in *Johnson* (i.e., whether and how certain events occurred) and addresses the district court's legal error in assessing the plaintiff's evidence at summary judgment, that part of the appeal is fair game for us to resolve. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609–10 (6th Cir. 2015) (recognizing various legal determinations that can be made on interlocutory qualified immunity appeals, including "whether the district court

properly assessed the incontrovertible record evidence"); *see also Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (en banc) (holding that mixed questions of law and fact are reviewable on an interlocutory qualified immunity appeal).

This appeal squarely presents a legal question: whether Slayton has "created a question of fact" by relying on only inadmissible evidence. *Est. of Matthews by Matthews v. City of Dearborn*, 826 F. App'x 543, 548 (6th Cir. 2020) (Readler, J., concurring). Otis's central argument is that Slayton's testimony identifying Otis is "speculative conjecture" beyond Slayton's "personal knowledge." Appellant's Br. at 21, 23. Because speculative testimony is inadmissible, *see* Fed. R. Civ. P. 602, Otis argues at length that "there is no admissible evidence that [he] had any involvement in the application of force . . . toward Slayton," Appellant's Br. at 16; *see also id.* at 23–24, 27–28, 30. The argument, it bears emphasizing, is premised on black letter law that a party cannot defeat summary judgment with inadmissible evidence, *see* Fed R. Civ. P. 56(c)(1)(B), such as "conclusory allegations, speculation, and unsubstantiated assertions," *Jennings v. County of Monroe*, 630 F. App'x 547, 555 (6th Cir. 2015); *cf.* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727. 2 (4th ed. 2021) (observing that "evidence in opposition to [a summary judgment] motion that clearly is without any force," such as evidence based on "mere suspicions," "is insufficient to raise a genuine issue"). And unlike the officers in *Johnson*, Otis is not suggesting that Slayton is lying (although he may think that). Instead, Otis argues the opposite: if we take Slayton's deposition testimony at face value, it is simply too speculative to be admissible for purposes of summary judgment.

Even before the Supreme Court's narrowing of *Johnson*, we had long held that questions of evidence admissibility raise pure legal questions, questions that are within our jurisdiction over interlocutory appeals from qualified immunity denials. Take *Turner v. Scott*, 119 F.3d 425 (6th

Cir. 1997). At issue there was an interlocutory appeal in a civil rights case. The plaintiffs alleged that a police officer failed to prevent another officer from striking a detainee. *Id.* at 426. While admitting that there was "no evidence that [the police officer] knew about" the act of excessive force, the district court denied summary judgment, venturing that there could have been a "conspiracy" or "coverup" because the officer "has got a record of misbehaving." *Id.* at 427 (citations omitted). On appeal, we rejected the argument that *Johnson* divested our court of jurisdiction. The case, we explained, presented us with a "purely legal issue"—whether, after discounting any inadmissible evidence, the officer was entitled to qualified immunity as a matter of law. *Id.* at 428; *see also id.* at 430 (holding that the evidence the district court relied on to deny summary judgment was either wholly speculative or otherwise inadmissible). What was true in *Turner* is true today: we have jurisdiction to review whether a summary judgment ruling was based on inadmissible speculative evidence.

The majority opinion, I acknowledge, sees things differently. It reads our cases as viewing *Johnson* to be the rule and *Mitchell* the exception. Maj. Op. at 8–9. At times, it is true, we have overindulged in embracing *Johnson*. *See Gillispie v. Miami Township*, 18 F.4th 909, 920–21 (6th Cir. 2021) (Bush, J., concurring in part and dissenting in part); *Sevy*, 815 F. App'x at 67 (Readler, J., concurring in part and in judgment); *Barry*, 895 F.3d at 449 (Sutton, J., dissenting); *Romo v. Largen*, 723 F.3d 670, 679 (6th Cir. 2013) (Sutton, J., concurring in part and concurring in the judgment). But that zeal cannot override intervening Supreme Court case law. At the very least, the loose contours of our case law taking an expansive view of *Johnson* cannot override more specific decisions like *Turner*, which cemented our practice of reviewing questions of evidence admissibility at summary judgment as part of our interlocutory jurisdiction.

To be fair, Otis's briefing clouds the nature of his appeal by also making a sufficiency argument. *See, e.g.*, Appellant's Br. at 24 (making a secondary argument that "Slayton's speculation is contrary to the unrebutted testimony of Officer Conz"). And I agree with the majority opinion that, to the extent Otis's arguments on this point venture into the ilk of "I didn't do it" à la the officers in *Johnson*, we lack jurisdiction to review them. *See Mitchell*, 472 U.S. at 528 n.5 ("An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts . . . ."). But simply because Otis made one argument for which we lack jurisdiction does not mean we lack jurisdiction as to all of them. *See DiLuzio*, 796 F.3d at 611 ("[W]e can 'ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction.'" (quoting *Est. of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005))); *see also Est. of Matthews,* 826 F. App'x at 548 (Readler, J., concurring) (observing that "appellate courthouse doors remain open to [a] legal argument" even when an advocate has "color[ed] their case with their factual perspective[]" or made "alternat[e] arguments[] turning on facts"). Why throw out the entire bushel, in other words, for one bad apple? In the end, Otis's appeal seems to raise two distinct questions: (1) can Slayton survive summary judgment by relying on inadmissible evidence and (2) if admissible, is Slayton's evidence enough to create a dispute of fact. The second question strikes me as merely a sufficiency challenge. Yet the first, a legal one, is one we can answer.

And the answer is rather straightforward. Slayton's testimony is not inadmissible speculation. Slayton has presented more evidence than just his guess that Otis was involved in his beating. In his deposition, he stated that he "believed" Otis and one other officer kicked him, identifying Otis by his skin color, other physical attributes, and location near Slayton's head as the

kicking occurred. That assertion, in my view, is a lay opinion derived from facts within Slayton's personal knowledge. *See* Fed. R. Evid. 602, 701; *cf. Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.") While Slayton's evidence is not robust, it is stronger than other cases where we have found a plaintiff's evidence too speculative to survive summary judgment. *See, e.g.*, *Jordan v. Howard*, 987 F.3d 537, 545 (6th Cir. 2021) (holding that expert testimony was speculative when the expert guessed that a police shooting victim did not draw his weapon because the weapon was undamaged); *Jennings*, 630 F. App'x at 555 (observing that plaintiff's bald assertions that his former boss was actively blackballing him from future employment was too speculative to defeat summary judgment); *cf. Sagan v. United States*, 342 F.3d 493, 500 (6th Cir. 2003) (concluding that it was more than "mere[] conjecture or speculation" when three separate medical experts testified that the defendant "probably" contributed to the plaintiff's injury). On the merits, then, I would affirm the district court.